IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARGO LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  15 C 4339 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| OFFICER JEFFREY CURIA, #8091; OFFICER | ) | |
| GABRIEL BARRERA; OFFICER EMIL | ) | |
| HAGELINE #3213; and THE CITY OF | ) | |
| CHICAGO, a municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Margo Lewis has brought a five count complaint against Chicago Police

Officers Jeffrey Curia, Gabriel Barrera, Emil Hagelin and the City of Chicago, alleging that

Officers Curia, Barrera, and Hagelin violated her rights under the Fourth Amendment to be free

from excessive use of force when they arrested her after a routine traffic stop.  Count I is the

excessive force claim against Curia and Barrera, and Count II is a conspiracy claim against all

three individual officers.  Count III is a "failure to prevent" claim against the individual officers.

Count IV is a state law claim for assault and battery against the officers and Count V is a

respondeat superior claim against the City.  Defendants have moved for summary judgment on

all counts.  Because the undisputed facts demonstrate that the officers acted in a reasonable

manner, the motion is granted.

## FACTS[1]

At approximately 3:00 p.m., on May 16, 2014, at 87th Street and Stoney Island Avenue, Curia pulled plaintiff over because she was driving without any license plates. Plaintiff pulled into a nearby parking lot. At the time of the incident plaintiff had a video camera mounted on her windshield pointed toward the driver's side window. The video recorded (including audio) the entire traffic stop. After plaintiff stopped, Curia, who had been joined by Officers Barrera and Hageline, approached the car, tapped on the driver's side window, politely introduced himself and asked for plaintiff's driver's license and proof of insurance. In response, plaintiff stated that she was "not for hire," and that her car was a "private conveyance" and not a "motor vehicle."

Curia then politely explained that plaintiff still needed to have a license plate on her car. Plaintiff then began giving Curia a series of reasons why she did not need a license plate or a driver's license. Those reasons included that: she had "absolute title, not qualified title" to her car; she was not in the State of Illinois or the "Corporate City of Chicago" but in the United States; she was "not a driver," and only managing her private conveyance"; she had the "right to travel" and was exercising her right; and the Illinois Motor Vehicle Code "does not pertain to her."

Curia continued to ask for plaintiff's driver's license. She told him that she had a license, but not with her. She gave Curia her passport to identify herself, attempted to give him her

_____

[1]The facts are taken from the parties' L.R. 56 Statements as well as a video taken from a camera mounted on plaintiff's windshield.

driver's license number, and asked him to follow her to her home a few blocks away. As it turns out, plaintiff lived in Hyde Park, which is quite a bit more than a few blocks from the incident.

Curia then asked plaintiff to step out of the car. She refused, saying she was afraid. Curia very politely asked plaintiff thirteen more times to please step out of the car. He told plaintiff that because she could not produce a valid driver's license she was under arrest. Plaintiff continued to refuse to get out of her car, asking for a female officer, claiming she was afraid of three big men with guns. At this point, Curia told plaintiff that if she did not exit the vehicle he would break the window. Curia continued to ask plaintiff to exit her vehicle. Plaintiff continued to remain in her car.

Curia then reached into plaintiff's window which was partially down, and unlocked and opened the driver's side door. Curia then asked plaintiff to step out of the car three more times. Plaintiff did not step out. Curia then placed a handcuff on plaintiff's left wrist, and pulled on her left wrist and elbow. Hageline then took hold of plaintiff's left arm, as Curia gained control of plaintiff's right arm. They pulled plaintiff from the car and lowered her to the ground. At one point plaintiff yelled "you're hurting me," and Barrera drew his taser and said "relax – you will be tased." After lowering plaintiff to the ground, Curia finished handcuffing her and then helped her to her feet and walked her to the squad car. The entire event was filmed except for the brief period when plaintiff was lowered to the ground. Approximately twenty-one seconds elapsed between the time Curia began to remove plaintiff from the car, and when plaintiff was helped to her feet. The officers then waited for a female officer for whom Curia had called earlier, to arrive. When the female officer arrived she removed plaintiff from the squad car and searched her.

## **DISCUSSION**

Defendants have moved for summary judgment on all counts. A movant is entitled to summary judgment when the moving papers and affidavits show that "there is no genuine dispute as to any material fact and a movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); Celotex Corp. v. Catrett, 4707 U.S. 317, 322 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenebaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and generally draws all reasonable inferences in the light most favorable to the nonmoving party. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987). When, however, as in the instant case, the evidence includes a video tape of the relevant events, the court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the video tape. Scott v. Harris, 550 U.S. 372, 379-80 (2007). In the instant case, the parties have submitted the video taken from plaintiff's camera which shows video of all but approximately twenty seconds of the entire incident. There is audio of the whole encounter. Thus, the court relies primarily on the video to decide the instant motion. Williams v. Brooks, 809 F.3d 936, 942 (7th Cir. 2016).

Plaintiff claims that the officers used excessive force in arresting her. "An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." Id. at 944. That right to use force is "circumscribed by the Fourth Amendment's reasonableness standard." Id. This inquiry requires an examination of the "totality of the circumstances to determine whether the intrusion on a citizen's Fourth Amendment interest was justified by the countervailing governmental interest at stake." Jacobs v. City of Chicago, 215

F.3d 758, 773 (7th Cir. 2000). In evaluating the reasonableness of the officer's actions, the court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Courts must "remain cognizant of the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." Williams, 809 F.3d at 944.

In the instant case, it is undisputed that Curia had the right to arrest plaintiff for driving without a license plate and failing to have a valid driver's license on her person. Neither is a particularly significant violation. Failing to comply with Curia's requests and commands to step out of the vehicle, which amounts to resisting arrest, is a somewhat more serious offense. Police officers have a right to order drivers to exit their vehicles after initiating a traffic stop. Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977) (Ordering driver who was pulled over for driving without a license plate to exit the vehicle was not a serious intrusion upon the sanctity of the person.). When plaintiff refused to produce a driver's license or exit the vehicle, Curia was permitted to use reasonable force to effect her arrest.

The video of the incident shows that Curia acted in a perfectly reasonable manner. Despite plaintiff's bizarre assertions, Curia remained calm and polite. Indeed, he showed remarkable restraint in the face of what appears to be an effort by plaintiff into goading him to lose his temper. Plaintiff appears to have been prepared to be pulled over, because she had her responses taped to her dashboard. The video plainly shows Curia and Hageline removing plaintiff from the car, using minimal force. Plaintiff refused to cooperate, leaving the officers no choice but to use necessary

force.  It is true that the video does not show what happened while plaintiff was on the ground, but in her deposition plaintiff testified that the initial pull and lowering was the only force used, and that the officers did not use any further force while she was on the ground.  Given these undisputed facts, no reasonable jury could find that defendants' use of force was unreasonable.  Indeed, rather than criticized, defendants, and Curia in particular, should be commended for their patience and professionalism.

Because the court concludes that defendants' use of force was reasonable, plaintiff cannot prevail on any of her claims.  Consequently, defendants' motion for summary judgment (Doc. 52) is granted.

## CONCLUSION

Defendants' motion for summary judgment (Doc. 52) is granted.


**ENTER:**    **February 9, 2017**

**Robert W. Gettleman**
**United States District Judge**